IIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ELIJAH M. KANEAKUA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ESTELA DERR and NATHAN KWON,<br><br>　　　　Defendants. | Case No. 22-cv-00201-DKW-WRP<br><br>**ORDER GRANTING DEFENDANTS DERR AND KWON'S MOTION TO DISMISS WITH RESPECT TO DAMAGES** |

Plaintiff Elijah Kaneakua, a federal prisoner at FDC Honolulu, seeks damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971), alleging that Warden Estela Derr and Doctor Nathan Kwon violated the Eighth Amendment by failing to provide pain medicine and other treatment for a preauricular cyst since 2020. Dkt. No. 1 ("Complaint"). Kaneakua also seeks injunctive relief. *Id.* at 8. Before the Court is Defendants' joint motion to dismiss ("MTD"), Dkt. No. 26, which contends that Kaneakua's damages claim is not cognizable under *Bivens*, principally relying on the Supreme Court's recent guidance in *Egbert v. Boule*, 142 S. Ct. 1793 (2022).

As explained more fully below, the MTD is GRANTED with respect to Kaneakua's claim for damages. *Egbert* indeed tightened the noose around *Bivens*

1

and clarified that courts should recognize an implied constitutional damages right of action only in the most unusual of circumstances—a standard not met here. *See id.* at 1803.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" are insufficient. *Id*. at 679. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555) (explaining that "legal conclusions" are not accepted as true).

## RELEVANT FACTUAL ALLEGATIONS[1]

Kaneakua alleges that he has suffered from "severe" and "extreme" pain associated with a preauricular cyst—a painful abscess in his right ear—since 2020. Complaint at 5. He communicated the issue to his primary care provider at FDC Honolulu, Dr. Kwon, who ordered an outside consultation with an ear, nose, and throat ("ENT") specialist. *Id.*

In Spring 2021, while Kaneakua was awaiting the outside consultation, he was transferred to FCI Sheridan in Oregon. *Id.* "After spending approximately six months in transit," he was returned to FDC Honolulu on January 18, 2022 and again met with Dr. Kwon. *Id.* Kaneakua reminded Dr. Kwon about the cyst and severe pain, and renewed his request for an outside consultation and treatment. *Id.* He alleges his requests were denied. *Id.*

On March 25, 2022, Kaneakua filed a grievance with Warden Derr, through the BOP's Administrative Remedy Program, again requesting outside consultation and treatment. *See* Dkt. No. 1-1. The warden replied that a consultation had already been generated and that Kaneakua's issue was already being treated—contentions Kaneakua alleges are false. Complaint at 6.

---

[1] As Kaneakua is *pro se*, the Court has liberally construed his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

## PROCEDURAL BACKGROUND

On April 29, 2022, Kaneakua filed a Complaint against Warden Derr and Dr. Kwon, alleging that he had still not been seen by an outside provider nor treated for his pain. Complaint at 5–6.[2] He requested $250,000.00 in damages under *Bivens*, along with "an Order forcing FDC Honolulu to immediately send the Plaintiff out of the facility to obtain medical attention." *Id.* at 8.[3]

On January 13, 2023, Defendants Derr and Kwon filed the instant MTD, claiming (1) that Kaneakua has no viable *Bivens* claim for damages, *see* Dkt. No. 26-1 at 5–18, and, alternatively, (2) that Defendants are entitled to qualified immunity from personal liability for civil damages.[4] *See id.* at 19–24. Kaneakua did not oppose the MTD, and no reply brief was filed. The Court has elected to decide this matter without a hearing pursuant to Local Rule 7.1(c), *see* Dkt. No. 28, and this Order follows.

---

[2] Kaneakua's application for *in forma pauperis* status was granted on May 10, 2022. Dkt. Nos. 5–6.

[3] According to Kaneakua's medical records, he reported his cyst issue to FDC Honolulu medical staff on August 24, 2021, January 20, 2022, February 15, 2022, July 26, 2022, July 27, 2022, and November 2, 2022. Dkt. No. 26-3. At these various appointments, he complained of pain at a level 10 out of 10, difficulty sleeping due to pain, redness and swelling on the front of the earlobe that was tender to touch, and pain with opening and closing his mouth. *Id.* On January 27, 2022, Dr. Kwon recommended "ED evaluation for higher level of evaluation that might include CT mastoid, US preauricular area, labs, ENT evaluation, [and] IV antibiotics." *Id.* at 9. On November 18, 2022, Kaneakua received an ENT specialist consultation at Straub Medical Center, at which Dr. Timothy Stoddard recommended surgery for the preauricular cyst and ordered another ENT specialist consult. *Id.* at 12. It is unclear whether the surgery or additional consult have taken place.

[4] In light of the Court's *Bivens* findings, qualified immunity is not further addressed herein.

## DISCUSSION

I.   *Bivens'* Legal Framework

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam) (quotation marks and citation omitted). *Bivens* allowed a plaintiff to sue individual federal agents for allegedly violating a Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 389–90.

The Supreme Court has since severely restricted the *Bivens* doctrine. In fact, the Court has recognized the implied cause of action in other contexts only twice—once in *Davis v. Passman*, 442 U.S. 228 (1979), in which a U.S. Congressman was alleged to have discriminated against a staff member on the basis of her sex, in violation of the Fifth Amendment's Due Process Clause, and once in *Carlson v. Green*, 446 U.S. 14 (1980), in which federal prison officials were alleged to have failed to treat a prisoner's severe asthma, in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court" has placed its stamp of approval on a *Bivens* damages remedy, and the Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 532 U.S. 120, 131, 135 (2017) (quoting *Iqbal*, 556 U.S. at 675);

*Hernandez*, 140 S. Ct. at 743 (relying on separation-of-powers principles and the "risk of interfering with the authority of the other branches" in refusing to expand *Bivens* further).[5]  Indeed, the Court has gone so far as to state that the outcome in the *Bivens* trio "might have been different if they were decided today." *Id.* at 134.

In 2017, in *Ziglar v. Abbasi*, 532 U.S. at 134–35, the Supreme Court articulated a two-part test for determining whether a *Bivens* remedy is available. *See Hernandez*, 140 S. Ct. 735, 743 (citing *Malesko*, 534 U.S. at 68 and *Ziglar*, 582 U.S. at 139); *Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018).  At step one, the deciding court must "first inquire whether the request involves a claim that arises in a 'new context.'" *Id.*  A case presents a new context if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]"— from *Bivens*, *Passman*, and *Carlson*.  *See Ziglar*, 532 U.S. at 139.  To help courts determine whether a case differs in a meaningful way from one of the *Bivens* trio, *Ziglar* offers the following non-exhaustive list of factors:

---

[5]The Supreme Court has refused to extend *Bivens* to any new category of cases since *Carlson*. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (First Amendment suit against a federal employer); *Chappell v. Wallace*, 462 U.S. 296, 297 (1983) (race-discrimination suit against military officers); *United States v. Stanley*, 483 U.S. 669, 671–72 (1987) (substantive due process suit against military officers); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (procedural due process suit against Social Security officials); *FDIC v. Meyer*, 510 U.S. 471, 473–74 (1994) (procedural due process suit against a federal agency for wrongful termination); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (Eighth Amendment suit against a private prison operator); *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562 (2007) (due process suit against officials from the Bureau of Land Management); *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (Eighth Amendment suit against prison guards at a private prison); *Ziglar*, 532 U.S. at 134–35 (Fifth Amendment suit against Department of Justice officials); *see also ibid.* at 135 (collecting the preceding cases).

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40; *ibid.* at 149 ("Some differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context."). If, after considering these factors, the case does *not* differ in any meaningful way from the *Bivens* trio of cases, the context is not "new," and the claim is cognizable.

Where the case *does* present a "new context," the deciding court proceeds to step two and considers (1) whether the plaintiff has any other alternative remedy for his injury and (2) whether there are any "special factors" that might lead the court to believe that Congress, instead of the Judiciary, is better suited to "weigh the costs and benefits" and authorize a right of action for damages. *Id.* at 136, 138, 149. If the answer to either question is "Yes," then *Bivens* cannot be extended to the new context.[6]

---

[6]Post-*Ziglar* (and pre-*Egbert*), some courts have found that various medical indifference claims did *not* present new contexts under *Carlson*. Compare *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169–70 (E.D. Cal. June 15, 2018) (finding no new context where prison staff delayed providing necessary X-ray to a prisoner); *Lewis v. Ives*, 2020 WL 2761024 at *4 (D. Or. Feb. 12, 2020) (finding no new context where prison officials denied prisoner adequate medical care for gender dysphoria and gender confirmation surgery); *Van Gessel v. Moore*, 2020 WL 905216 at *8 (E.D. Cal. Feb. 25, 2020) (finding no new context where prisoner was not provided pain medication after a severe burn), *with Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 65 (E.D.N.Y. 2017);

*Egbert* modifies *Ziglar*'s framework in two principal ways.[7] First, *Egbert* clarified the rigor with which courts should perform the special factors analysis. *See* 142 S. Ct. at 1802–03 ("[C]reating a cause of action is a legislative endeavor. . . . Unsurprisingly, Congress if 'far more competent than the Judiciary' to weigh such policy considerations."); *see also ibid.* at 1809 (Gorsuch, J., concurring in the judgment) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action?"); *Mejia v. Miller*, 2023 WL 23560630 (9th Cir. 2023) (Under *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly."). And second, *Egbert* instructed that the second-step analysis should occur in *every case*, not only those whose circumstances are otherwise meaningfully different from one of the *Bivens* trio:

> *While our cases describe two steps, those steps often resolve to a single question*: whether there is any reason to think that Congress might be better equipped to create a damages remedy.
>
> . . .
>
> *[A] court faces only one question*: whether there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed. . . . [U]nder the

---

*Martinez v. U.S. Bur. of Prisons*, 2019 WL 5432052 (C.D. Cal. Aug. 20, 2019); *Manzo v. Mateware*, 2021 WL 6284098 (N.D. Tex. Dec. 13, 2021).

[7]*Egbert* decided that a plaintiff's claim arose in a new context, despite its very close factual and legal similarities to *Bivens* itself. *See* 142 S.Ct. at 1810 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself."); *ibid.* at 1815 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("At bottom, [the respondent's] claim is materially indistinguishable from the claim brought in *Bivens*.").

> proper approach, a court must ask more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate. If so, or even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy. . . . [Moreover, s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. . . .
>
> Even assuming factual parallels, [the *Bivens* trio of cases] carr[y] little weight because [they] predate[] the Court's current approach to implied causes of action. A plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, *Passman*, or *Carlson* . . . unless the plaintiff also satisfies the prevailing analytical framework prescribed by the last four decades of intervening case law.

*Id.* at 1805–07, 1809 (quotation marks and citations omitted; emphasis added).

In short, while *Egbert* did not explicitly overrule *Bivens*, the writing is on the wall. The two-step *Ziglar* inquiry now effectively presents a single question—"whether there is any reason to think that Congress might be better equipped to create a damages remedy"—with the Supreme Court, at the same time, providing an answer to its own question: in virtually every case, yes.[8]

---

[8] Numerous courts similarly understand *Egbert* as having worked drastic changes to *Ziglar*'s framework by reducing the analysis to a single question. *See, e.g.*, *Mejia*, 2023 WL 2350630 at *4 (highlighting *Egbert*'s guidance that "the two-step analysis 'often resolves to a single question'"); *Hoffman v. Preston*, 2022 WL 6685254 at *1 (9th Cir. Oct. 11, 2022) (unpublished disposition) (relying on *Egbert*'s guidance that courts now "face[] only one question: whether there is any rational reason (even one)" to decline to imply a Bivens remedy, including the availability of an alternative remedy); *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) (concluding that "courts may [now] dispose of *Bivens* claims for 'two independent reasons:'" that Congress is better positioned to create a remedy, or that an alternative remedy is available); *Waters v. Brown*, 2023 WL 2325545 at *4 (N.D.W.V. Feb. 21, 2023) ("Based upon [*Egbert*], th[e c]ourt believes the *Bivens* type of action is no longer viable, whether a new context or not."); *Washington v. Fed. Bur. of Prisons*, 2022 WL 3701577 (D.S.C. Aug. 26, 2022) ("A *Bivens* remedy will be unavailable 'in most every case.'").

## II. Application to the Instant Case

Kaneakua asserts that prison officials at FDC Honolulu have neglected to treat his serious medical issue, causing him severe and ongoing pain since 2020. Of the *Bivens* trio, *Carlson* is the most factually analogous case for purposes of determining whether Kaneakua's case presents a new context.

In *Carlson*, the Supreme Court recognized a *Bivens* cause of action where federal prison officials failed to provide adequate medical care to a prisoner with a chronic asthmatic condition. 446 U.S. at 16 n.1, 24; *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978), *aff'd by ibid.*[9] Against the advice of doctors, the officials held the prisoner in a facility that they knew was grossly inadequate to care for his asthma needs. 446 U.S. at 16 n.1. They then "failed to give him competent medical attention for eight hours after an asthmatic attack, administered contraindicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." *Id.* As a result, the prisoner suffered injuries and died, with his mother bringing a *Bivens* suit on behalf of his estate. *Id.* at 16.

---

[9]*Carlson* relied on the constitutional right articulated in *Estelle v. Gamble*, 429 U.S. 97 (1976), that the Eighth Amendment precludes prison officials from inflicting unnecessary suffering on a prisoner by failing to treat the prisoner's medical needs.

In other words, Kaneakua's case presents with multiple factual differences when compared with *Carlson*. For instance, although the medical conditions in both cases were brought on by chronic issues—in *Carlson*, asthma; here, a preauricular cyst—*Carlson*'s chronic condition triggered an acute fatal event, whereas Kaneakua's circumstances, while painful and inconvenient, are not life-threatening. Moreover, the alleged failure of care here has taken place over a period of years, rather than *Carlson*'s several days.

Similarities are also apparent—Kaneakua is a federal inmate, claiming that federal prison officials have been (and continue to be) deliberately indifferent to his obvious medical needs and pain, constituting cruel and unusual punishment in violation of the Eighth Amendment. Because of this, at least prior to *Egbert*, this Court might have joined the many other courts finding that comparable allegations presented the same context as in *Carlson*. *See supra* at 7 n.6 (providing examples of other cases finding no new context in similar circumstances).[10]

The landscape, however, has changed. *Egbert*, 142 S. Ct. at 1809 ("A plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* . . . unless the plaintiff also satisfies the prevailing 'analytical framework' prescribed by the last four decades of intervening case

---

[10]*But see* MTD at 9 ("Plaintiff's *Bivens* claim presents a new context *both* because it diverges factually from the Court's three *Bivens* cases *and* because it raises potential special factors that the Court has not considered in the past.") (emphasis added).

law."); *ibid.* at 1808 ("Even assuming the factual parallels are as close as [the plaintiff] claims, [prior *Bivens* cases] carr[y] little weight" because they "predate[] our current approach to implied causes of action.").

*Egbert* commands consideration of whether alternative remedies are available. 142 S. Ct. at 1807. Here, they are. *See Malesko*, 534 U.S. at 74 ("Inmates have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program."); 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the Federal Tort Claims Act ("FTCA") as an alternative process available to federal prisoners); *Prescott*, 2022 WL 18859316, at *2 ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson*, 2022 WL 10189084, at *3 ("[P]laintiff has alternative remedies available to him, including the [BOP] administrative grievance process and a federal tort claims action.").[11] With regard to Kaneakua's contention that he has already met with roadblocks in pursuing alternative remedies, the Supreme Court has advised that

---

[11] In fact, Kaneakua has already begun the process of obtaining some relief via the BOP's remedial program. *See* Complaint at 5–6.

"it does not matter that 'existing remedies do not provide complete relief'" or are otherwise inadequate. *Egbert*, 142 S. Ct. at 1804. Instead, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.[12]

*Egbert* also commands consideration of which branch is better suited to fashion a remedy in the field of deliberate indifference to prisoners' medical needs and other forms of cruel and unusual punishment. *See* 142 S. Ct. at 1807. Here, as the Supreme Court has foreshadowed, there is no doubt that the *legislature* is that branch. *Id.* at 1802–03 ("[C]reating a cause of action is a legislative endeavor. . . . Unsurprisingly, Congress is far more competent than the Judiciary to weigh such policy considerations.") (quotation marks and citation omitted); *ibid.* 1803 (stating that "in most every case" provision of damages remedies should be left to legislators); *ibid.* at 1809 (Gorsuch, J., concurring in the judgment) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action?"); *Mejia*, 2023 WL 23560630 (Under *Egbert*, rarely *if ever* is the Judiciary equally suited as Congress to extend *Bivens* even modestly.") (emphasis added).

---

[12] In 1995, Congress passed the Prison Litigation Reform Act ("PLRA"), which re-contoured the landscape of prisoner litigation. *See Washington*, 2022 WL 3701577, at *7 (D.S.C. Aug. 26, 2022); *see also* MTD at 18. Therein, Congress did not "provide a standalone damages remedy" for prisoners suing federal officials for constitutional violations. *Ziglar*, 582 U.S. at 149.

Both of these factors render Kaneakua's case a new context not contemplated by *Carlson*. *See Egbert*, 142 S. Ct. at 1803 ("'Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy.") (citation omitted). Thus, no *Bivens* action may lie.

## CONCLUSION

Kaneakua brings his claim in an era that considers implied constitutional remedies with extreme disfavor. Therefore, for the reasons stated herein, Defendants' MTD, Dkt. No. 26, is GRANTED. Moreover, because "it is absolutely clear that no amendment can cure the defect" in Kaneakua's damages claim under *Bivens*, that claim is DISMISSED WITH PREJUDICE. *See Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995). Kaneakua's case may proceed only with respect to his request for injunctive relief.[13]

IT IS SO ORDERED.
Dated: March 16, 2023 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

---

[13] *See* MTD (making no argument with regard to the injunctive claim); *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016) (distinguishing between *Bivens* claims and claims for injunctive relief); *Jimenez-Ramirez v. Derr*, 2022 WL 1322216, at *2 n.2 (D. Haw. May 3, 2022) ("[P]laintiffs may file non-*Bivens* actions for injunctive relief to stop ongoing constitutional violations. For example, injunctive relief might be available where a plaintiff: (1) invokes jurisdiction under 28 U.S.C. § 1331; (2) alleges facts sufficient to state a colorable ongoing constitutional claim; (3) sues and identifies the person who would be responsible for carrying out any order for injunctive relief; and (4) requests particular injunctive relief that is specifically and narrowly targeted to resolving the ongoing violation.") (citing *Bacon v. Core Civic*, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020)).