IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIJAH M. KANEAKUA, | CASE NO. CV22-00201 DKW-WRP |
| Plaintiff, | MEMORANDUM IN SUPPORT |
| v. | |
| NATHAN KWON; ESTELA DERR, individually, | |
| Defendants. | |

MEMORANDUM IN SUPPORT

## **<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION ................................................................................1

II.  STATEMENT OF FACTS ..................................................................2

III.  KANEAKUA'S COMPLAINT ...........................................................6

IV.  STANDARDS OF REVIEW................................................................7

    A.  Dismissal Pursuant to Rule 12(b)(6) ......................................7

    B.  Summary Judgment Pursuant to Rule 56 ................................8

V.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY..............9

    A.  General Principles of Qualified Immunity.............................9

    B.  Standard for Establishing Deliberate Indifference in Violation of the Eighth Amendment.................................................................11

    C.  Dr. Kwon is Entitled to Qualified Immunity ......................13

    D.  Warden Derr is Entitled to Qualified Immunity ..............166

VI.  CONCLUSION...........................................................................188

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ...................................................................8

*Anderson v. Creighton*,
483 U.S. 635, 638 (1987).........................................................................10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................8

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)...............................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................8, 9

*Estelle v. Gamble*,
429 U.S. 97 (1976) ............................................................................ 11, 12

*Evans v. Skolnik*,
997 F.3d 1060 (9th Cir. 2021) .................................................................10

*Farmer v. Brennan*,
511 U.S. 825 (1994).................................................................................12

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ...................................................................7

*Gasho v. United States*,
39 F.3d 1420 (9th Cir. 1994) ...................................................................14

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)...................................................................................9

**<u>Cases</u>**                                                                      **<u>Page(s)</u>**

*Hunt v. Dental Dep't,*
865 F.2d 198 (9th Cir. 1989) ...................................................................15

*Jeffers v. Gomez,*
240 F.3d 845 (9th Cir. 2001) ..................................................................10

*Jett v. Penner,*
439 F.3d 1091 (9th Cir. 2006) ................................................................15

*Johnson v. Riverside Healthcare Sys.,*
534 F.3d 1116 (9th Cir. 2008) ..................................................................7

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ................................................................12

*Malley v. Briggs*,
475 U.S. 335, 341 (1986)........................................................................10

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
519 F.3d 1025 (9th Cir. 2008) ..................................................................8

*McGuckin v. Smith,*
974 F.2d 1050 (9th Cir. 1992) ................................................................11

*Morales v. Fry,*
873 F.3d 817 (9th Cir. 2017) ..................................................................10

*Olivier v. Baca,*
913 F.3d 852 (9th Cir. 2019) ..................................................................10

*Pearson v. Callahan,*
555 U.S. 223 (2009)...........................................................................9, 10

*Sanchez v. Vild,*
891 F.2d 240 (9th Cir. 1989) ................................................................12

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987) ..................................................................9

**Cases**                                                                      **Page(s)**

*Toguchi v. Chung*,
391 F.3d 1051 (9th Cir. 2004) ........................................................... 12, 14

*Wakefield v. Thompson*,
177 F.3d 1160 (9th Cir. 1999) ................................................................15

*West v. City of Caldwell,*
931 F.3d 978 (9th Cir. 2019) ..................................................................14

*Wilson v. Seiter*,
501 U.S. 294 (1991).................................................................................11

**Statutes**
U.S. Const. amend. VIII.................................................................. passim

**Rules**
Fed. R. Civ. P. 12(b)(6)......................................................................... 7, 8

Fed. R. Civ. P. 56 ..................................................................................8, 9

## I.    INTRODUCTION

Plaintiff Elijah Kaneakua ("Kaneakua") alleges that, while he was an inmate at Federal Detention Center in Honolulu, Hawaii ("FDC"), his 8th Amendment rights were violated because he was denied access to medical care by then-FDC Clinical Director Dr. Nathan Kwon ("Dr. Kwon") and then-FDC Warden Estela Derr ("Warden Derr").[1]  Specifically, Kaneakua alleges that Dr. Kwon was deliberately indifferent to his medical needs related to a pre-auricular cyst[2], by failing to ensure his prompt referral to an outside specialist: specifically, an ear, nose and throat doctor ("ENT").  As to Warden Derr, Kaneakua alleges that she was deliberately indifferent to his medical needs by failing to adequately investigate his Administrative Remedy Request regarding his alleged lack of access to medical care.

Kaneakua's claims against Dr. Kwon and Warden Derr must be dismissed, as Kaneakua has not sufficiently pled an 8th Amendment violation or a violation of clearly established law.  Accordingly, Dr. Kwon and Warden Derr are entitled to qualified immunity.  Alternatively, Dr. Kwon and Warden Derr are entitled to

---

[1] Dr. Kwon and Warden Derr and both no longer employed by the Bureau of Prisons ("BOP").  Kaneakua is no longer in BOP custody.

[2] A preauricular pit is a small hole or cyst just in front of the ear above the ear canal.  The hole marks a sinus tact under the skin that is in the wrong place.  *See* WebMD at *https://www.webmd.com/skin-problems-and-treatments/what-is-preauricular-pit* (Feb. 1, 2025).

1

summary judgment on qualified immunity grounds because the undisputed facts

establish the alleged misconduct falls short of an 8th Amendment violation, and

even if an 8th Amendment violation were established, there was no clearly

established law putting the constitutional right at issue here beyond debate.

## II.    STATEMENT OF FACTS

Kaneakua was housed at FDC during two time periods, during which he

sought care for a pre-auricular cyst.  As to the first time period, prior to his transfer

to Federal Correctional Institution Sheridan ("FCI Sheridan"), in spring of 2021,

Kaneakua complained to Dr. Kwon of a pre-auricular cyst.  *See* Concise Statement

of Facts ("CSF"), filed herewith, at ¶ 1 (Ex. A: Mar. 15, 2021 Medical Record).

Specifically, in March 2021, Kaneakua reported the infection, and stated that it had

occurred "over 20 times" since childhood.  Dr. Kwon prescribed an antibiotic and

ordered an ENT consult.  *Id.*  Further, Dr. Kwon instructed Kaneakua to notify

staff immediately for any "urgent or emergent concerns."  *Id.*

2

Before Kaneakua was seen by an ENT, in or around July 2021 he was transferred to FCI Sheridan, and was not under the care of Dr. Kwon.[3]   ECF No. 4 at 5; CSF at ¶ 2 (Ex. M: Inmate History).   On or around January 18, 2022, Kaneakua, was transferred back to FDC.   *Id.*   Shortly thereafter, on January 20, 2022, Kaneakua was seen by Dr. Kwon.   CSF at ¶ 4 (Ex. C: Jan. 20, 2022 Medical Record).   Dr. Kwon noted that the cyst required draining about every 2 weeks, but there was no active "purulence."   *Id.* (Ex. C at 1). Dr. Kwon noted that Kaneakua reported normal hearing and voice, no headache, neck discomfort, odynophagia, or dysphagia.   *Id.*   Dr. Kwon also ordered chest X-rays.   *Id.*   He ordered an ENT consult with a target date of March 1, 2022, noting that the priority was "routine." *Id.* (Ex. C at 4).   Such consults are scheduled through a third-party provider and are subject to availability of the provider and staffing.   CSF at ¶ 17 (Khan Decl. ¶ 7).

On March 16, 2022, Kaneakua received medical treatment from a nurse practitioner.   CSF at ¶ 6 (Ex. E: Mar. 16, 2022 Medical Record).   He complained of a "hole" in his ear, that caused multiple infections, which he has had since birth.

---

[3] Kaneakua's care at FCI Sheridan is not at issue in this action. However, Defendants note that Kaneakua's medical records indicate that, at FCI, he was referred to an ENT, and the target date for the consult was December 12, 2021. CSF at ¶ 3 (Ex. B: Aug. 24, 2021 Medical Record) (noting the consult as "non-emergent").   It appears that the consult did not take place before Kaneakua was transferred back to FDC.   On February 15, 2022, a physician's assistant at FDC cancelled the FCI-Sheridan-ordered ENT consult.   CSF at ¶ 5 (Ex. D: Feb. 15, 2022 Medical Record).   A new consult had been generated by Dr. Kwon by that time, and remained pending.   CSF at ¶ 5 (Khan Decl. ¶ 7).

Kaneakua was prescribed antibiotics, and the nurse irrigated the ear. *Id.* (Ex. E at

2). The medical records note the establishment of a plan of care with a pending

ENT consult. *Id.*

On or about March 25, 2022, Kaneakua submitted a Request for

Administrative Remedy to Warden Derr, in which he complained of not receiving

treatment from an ENT regarding his medical issue. ECF No. 4 at PageID.30; CSF

at ¶ 7 (Ex. N: Request for Administrative Remedy at 5). Derr's response, dated

April 6, 2022, stated that her investigation revealed that (1) Kaneakua was

evaluated on January 20, 2022, which revealed a "chronic condition" since birth,

"which [was] not noted as emergent"; (2) an outside consultation with a specialist

was generated and is still pending; (3) during a medical exam on March 16, 2022,

Kaneakua again admitted to having the condition since birth, and was prescribed

medication; and (4) there were no complaints of pain or discomfort since the

March 16, 2022 visit. She finished: "You will be notified once your appointment

with an outside specialist is confirmed." ECF No. 4 at PageID.30; CSF at ¶ 8 (Ex.

N at 2).

On April 29, 2022, after receiving Warden Derr's response, Kaneakua filed

his Complaint, initiating this action. CSF at ¶ 9.

Several months passed without any indication of Kaneakua complaining of

his cyst. Then, on July 26, 2022, Kaneakua met with a nurse practitioner, and

4

complained of extreme discomfort due to the cyst. CSF at ¶ 10 (Ex. F: Jul. 26, 2022 Medical Record) (noting a pain scale of 10). The provider made a plan to send Kaneakua to the local hospital for CT scan and evaluation. She educated him on infection prevention and the plan of care. *Id.*

The next day, on July 27, 2022, Dr. Kwon met with Kaneakua regarding his preauricular swelling. CSF at ¶ 11 (Jul. 27, 2022 Medical Record). At that time, Dr. Kwon noted that the ENT consult was still pending, and prescribed antibiotics. Dr. Kwon scheduled a target date of August 5, 2022 for the consult, and marked the priority at "urgent." *Id.* According to medical records dated August 2, 2022, Kaneakua was taken to the Emergency Room on the same day for an "ear infection." CSF at ¶ 12 (Ex. H: Aug. 2, 2022 Medical Record); *see also* CSF ¶ 11 (Ex. G).[4] On August 8, 2022, Kaneakua refused a follow-up visit with Health Services. CSF at ¶ 13 (Ex. I: Aug. 8, 2022 Medical Record).

On November 2, 2022, Kaneakua met with a nurse practitioner, and complained of a pain scale of 3 due to his ear swelling. CSF at ¶ 14 (Ex. J: Nov. 2, 2022 Medical Record). Medications were ordered and renewed. *Id.* On November 15, 2022, he was seen for follow up care. The medical records note that

---

[4] There is some confusion in the record indicating the ER visit may have occurred on July 26, 2022. CSF at ¶ 12. Regardless, Kaneakua's complaint of extreme pain was immediately addressed.

Kaneakua did not report any pain at that time. CSF at ¶ 15 (Ex. K: Nov. 15, 2022 Medical Record).

On November 18, 2022, Kaneakua was seen by an ENT at Straub Medical Center, and care ensued. CSF at ¶ 16 (Ex. L: Nov. 21, 2022 Medical Record).

## III.    KANEAKUA'S COMPLAINT

Kaneakua filed the instant action on April 29, 2022, after receiving the April 6, 2022 response to his Request for Administrative Remedy from Warden Derr. ECF No. 1. Kaneakua alleges damages claims against Dr. Kwon and Warden Derr, in their individual capacities, for alleged deliberate indifference to his medical needs relating to a preauricular cyst, in violation of the 8th Amendment, while he was an inmate at FDC. ECF No. 4. Kaneakua appears to allege that Dr. Kwon violated the 8th Amendment by failing to treat his preauricular cyst by ensuring his prompt consultation with an ENT, and that Warden Derr violated the 8th Amendment by failing to adequately investigate his Administrative Remedy Request complaining of lack of immediate medical attention (despite attaching her

6

response, which appears to reflect an adequate investigation).  *Id.* at PageID.25–26,

30.  Kaneakua seeks $250,000 in damages.  *Id.* at Page.ID.29.

## IV.    STANDARDS OF REVIEW

### A.    Dismissal Pursuant to Rule 12(b)(6)

Dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) is proper

when the complaint fails to state a claim upon which relief can be granted.  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "Determining whether a complaint states a plausible claim for

relief [is] ... a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense."  *Id.* at 1950 (brackets added; citation

omitted).  While the complaint need not set out "detailed factual allegations," *Bell*

*Atlantic Corp.*, 550 U.S. at 555, it must provide sufficient factual amplification "to

raise a right to relief above the speculative level."  *Id.*  "A pleading that offers

'labels and conclusions' or a 'formulaic recitation of the elements of a cause of

action' will not do."  *Ashcroft*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp.*, 550

U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

"A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted). While the complaint must be construed in the light most favorable to the non-moving party, the Court need not accept as true "conclusory allegations of law and unwarranted inferences." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B.    Summary Judgment Pursuant to Rule 56

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The party seeking summary judgment bears the burden of establishing "the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

56(c)).  The "mere existence of some alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  As a result,

"[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at

248.

Once the moving party demonstrates that there is no genuine issue of

material fact, the nonmoving party must present "rebuttal affidavits, or other

specified kinds of materials."  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P.

56(e)).  The opposing party cannot stand on its pleadings, nor can it simply assert

that it will be able to discredit the movant's evidence at trial.  *See T.W. Elec. Serv.,*

*Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); Fed. R.

Civ. P. 56(e).  Instead, it must make a showing sufficient to establish all elements

essential to its case, and on which it will bear the burden of proof at trial.  *Celotex*,

477 U.S. at 322.  If it cannot, then no material issue of fact exists and summary

judgment is appropriate as a matter of law.  *Id.* at 322–23.

## V.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

### A.    General Principles of Qualified Immunity

The doctrine of qualified immunity recognizes that subjecting public

officials to personal liability distracts them from their duties, inhibits their actions,

and may deter qualified people from accepting public service.  *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982).  Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted).  Qualified immunity applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Id.*

The qualified immunity defense shields all government officials except those who are either plainly incompetent or who knowingly violate the law.  *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001).  As long as a defendant government employee could reasonably have thought his actions were consistent with the rights he was alleged to have violated, the defendant federal employee is entitled to qualified immunity.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

A qualified immunity inquiry asks two questions: (1) was there a violation of a constitutional right; and (2) was the right at issue "clearly established" such that it would have been clear to a reasonable officer that his/her conduct was unlawful in that situation.  *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021) (quoting *Pearson*, 555 U.S. at 232).  A court will grant a government actor qualified immunity if the actor's conduct satisfies either prong of the two-step test;

they need not be addressed in order.  *Id.* at 1065.  "The burden is on the party

contesting qualified immunity to show that a law was clearly established at the

time of an alleged violation."  *Olivier v. Baca*, 913 F.3d 852, 860 (9th Cir. 2019).

Qualified immunity should be decided as early in a lawsuit as possible.  *See*

*Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) ("The Supreme Court has

repeatedly stressed the importance of deciding qualified immunity at the earliest

possible stage in litigation in order to preserve the doctrine's status as a true

*immunity from suit* rather than a mere defense to liability.") (internal quotations

omitted).

### B.    Standard for Establishing Deliberate Indifference in Violation of the Eighth Amendment

The 8th Amendment's proscription against cruel and unusual punishment

may be violated by an official's "deliberate indifference to the serious medical

needs of a prisoner."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To state a claim

for deliberate indifference to a serious medical need, in violation of the 8th

Amendment, the prisoner must demonstrate: (1) that he or she suffered from a

serious medical condition of which the prison officials should have been aware;

and (2) that prison officials were "deliberately indifferent" to the prisoner's serious

medical needs.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)

(overruled on other grounds).

If an inmate establishes a serious medical need, then the inmate must show the prison official responded to the serious medical need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Specifically, deliberate indifference exists when a prison official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer,* 511 U.S. at 837-38. In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *Toguchi,* 391 F.3d at 1057. Mere negligence is insufficient to establish a constitutional violation. *Id.; Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

In sum, a determination of deliberate indifference requires that the plaintiff establish both: (1) the existence of a serious medical need which a reasonable doctor would find worthy of treatment, and (2) the purposeful act or failure to act on the part of the defendant so as to constitute an "unnecessary and wanton infliction of pain" which is "repugnant to the conscience of mankind." *Estelle*, at 105–106. A plaintiff's own assessment that his medical care was inadequate cannot form the basis of deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

12

## C.    Dr. Kwon is Entitled to Qualified Immunity

Here, Kaneakua has not alleged a sufficiently culpable state of mind to establish that Dr. Kwon acted with deliberate indifference.  Kaneakua alleges that Dr. Kwon failed to adequately treat him immediately, ECF No. 4 at PageID.25, but does not allege that Dr. Kwon intentionally or knowingly caused him to suffer. Accordingly, dismissal is proper because Kaneakua has not stated a constitutional violation as to Dr. Kwon.

Alternatively, even if Kaneakua's allegations survive dismissal, Dr. Kwon is entitled to summary judgment on qualified immunity grounds.  The medical records and Khan Declaration make clear that Kaneakua was treated by Dr. Kwon (and other medical staff) on numerous occasions for his cyst.  The medical records show that his condition was intermittent/evolving, and that Dr. Kwon (and others who provided care, who are not sued in this action) provided attendant care.  For instance, in March 2021, Kaneakua described the pain as "intermittent."  CSF at ¶ 1 (Ex. A at 1).  In response, Dr. Kwon provided antibiotics, and made a referral to an ENT with a "routine" priority."  *Id.* (Ex. A at 1–2).  Dr. Kwon also provided information about preventing infection and a plan of care.  *Id.* (Ex. A at 3–4). While Kaneakua was subsequently housed at FCI-Sheridan, it is noteworthy that the doctor who attended to Kaneakua there similarly ordered the ENT consultation as "routine" – as opposed to "priority."  CSF at ¶ 3 (Ex. B. at 1).  When Kaneakua

13

returned to FDC and met with Dr. Kwon again in January 2022, Kaneakua reported that his cyst needed to be drained every two weeks, but was not currently infected. CSF at ¶ 4 (Ex. C at 1). Kaneakua did not report pain from the cyst at that time, and Dr. Kwon reordered the ENT consult as "routine." *Id.* (Ex. C. at 4). Kaneakua was seen by a nurse practitioner about two months later for "ear irrigation." CSF at ¶ 6 (Ex. E). The nurse noted "tenderness to manipulation" in the area of the cyst, but that Kaneakua did not appear to be in distress. *Id.*

In comparison, later, in or around July 2022, Kaneakua began complaining to medical staff of severe pain relating to the cyst. *See, e.g.,* CSF at ¶ 10 (Ex. F) (noting a pain scale of 10). Medical staff and/or Dr. Kwon responded to this escalation by changing the priority of the ENT consult to "urgent" and ensuring that Kaneakua was taken to the Emergency Room. CSF at ¶¶ 11–12 (Ex. G) ("urgent" consult); (Ex. H) (emergency room visit).

***First,*** the above facts do not suggest a denial of medical treatment. To the contrary, they show that Kaneakua was consistently cared for in accordance with what he was reporting. A "difference of medical opinion" with Dr. Kwon's treatment plan "cannot support a claim of deliberate indifference." *Toguchi,* 391 F.3d at 1060. Accordingly, summary judgment should be granted because the undisputed facts do not support an 8th Amendment violation.

14

***Second***, even if an 8th Amendment violation was supported by the facts, such violation was not one of "clearly established" law. Although Kaneakua's complaint alleges that he did receive "any treatment since 2020," ECF No. 4 at PageID.5, when view in light of the medical records, Kaneakua actually appears to be claiming that he did not obtain a consult with an ENT since 2020 (although he eventually did receive one). A particular constitutional right is only "clearly established" when it is defined with specificity. *West v. City of Caldwell,* 931 F.3d 978, 984 (9th Cir. 2019). Because public officials are entitled to the benefit of any doubt, they are "presumed to be immune." *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). Here, there is no clearly established law that Kaneakua was entitled to a specific treatment, such as an ENT consult, when the record reflects that he had been treated all along his cyst, commensurate with the symptoms that he was reporting.[5]

---

[5] Ninth Circuit cases, such as *Jett v. Penner,* 439 F.3d 1091 (9th Cir. 2006), have found potential constitutional violations based on a delay in treatment of a medical condition. However, such cases do not make the alleged violation here "clearly established." Although *Jett* involved a delay in seeing a specialist, the doctor whose conduct was at issue, failed to even make a referral to the specialist, when an emergency room doctor (and others) had recommended such referral, and the doctor largely ignored the inmates pain complaints. *Jett,* 439 F.3d at 1097–98. Here, there is no such callousness at issue or actions knowingly contrary to a doctor's orders. *See also Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) (possible constitutional violation where prison officials ignored doctor's orders); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (possible constitutional violation where inmate denied any dental treatment while awaiting outside referral for serious condition that inmate repeatedly complained about).

Accordingly, Dr. Kwon is entitled to summary judgment on qualified

immunity grounds.

### D.    Warden Derr is Entitled to Qualified Immunity

As to Warden Derr, Kaneakua alleges that she is liable for "policies and

procedures" at FDC.  ECF No. 4 at PageID.22.  Kaneakua's claim against Warden

Derr appears to be based on a failure to adequately investigate his alleged lack of

access to medical care, as set forth in the Administrative Remedy Request that he

submitted in March 2022.  ECF No. 4 at PageID.26.  Warden Derr's response,

dated April 6, 2022, stated that her investigation revealed that (1) Kaneakua was

evaluated on January 20, 2022, which revealed a "chronic condition" since birth,

"which [was] not noted as emergent"; (2) an outside consultation with a specialist

was generated and is still pending; (3) during a medical exam on March 16, 2022,

Kaneakua again admitted to having the condition since birth, and was prescribed

medication; and (4) there were no complaints of pain or discomfort since the

March 16, 2022 visit.  ECF No. 4 at PageID.30.  She finished: "You will be

notified once your appointment with an outside specialist is confirmed." *Id.*; *see*

*also* CSF at ¶ 8 (Ex. N at 2.)

Although Kaneakua disagrees with Warden Derr's investigation[6], his

allegations are insufficient to establish that Warden Derr acted with deliberate

---

[6] For instance, Kaneakua alleges that the alleged ENT consultation was "removed"

indifference where she carefully reviewed his medical records.  And, taking the

Complaint, as a whole, as true, it would not have been clear to Warden Derr that

she acted unlawfully, in violation of the 8th Amendment, by relying on Kaneakua's

medical records in response to his complaint about lack of medical care.

Accordingly, dismissal on qualified immunity grounds is proper.

Alternatively, this Court should grant summary judgment in favor of Warden

Derr on qualified immunity grounds.  The medical records attached to the Khan

Declaration establish that Warden Derr accurately reported the medical records'

contents in her response to Kaneakua.  And, regardless of whether the medical

records are accurate – which there is no indication that they are not – Warden Derr

is entitled to summary judgment because the medical records, as written, with

responsive medical care and a pending referral to an ENT, would not have

indicated to a reasonable officer that further action was necessary to avoid

violating clearly established law.  Further, Kaneakua cannot meet the burden of

establishing that Warden Derr—based on these facts—knew of and disregarded an

excessive risk to Kaneakua's health. Accordingly, Warden Derr is entitled to

summary judgement on qualified immunity grounds.

---

from his consultation page.  ECF No. 4 at PageID.6.  However, Kaneakua appears
to be misinterpreting the cancellation of his FCI-Sheridan-generated ENT consult;
not.  *See* CSF at ¶ 5 (Khan Decl. ¶ 7).

## VI.    CONCLUSION

For the reasons stated above, Defendants Dr. Nathan Kwon and Warden Derr, former employees at FDC Honolulu, respectfully request the Court dismiss this case, or in the alternative, grant summary judgment on qualified immunity grounds.

DATED: October 22, 2025 at Honolulu, Hawaii.

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

/s/ Sydney Spector
By_____
SYDNEY SPECTOR
Assistant U.S. Attorney

Attorneys for Defendants
NATHAN KWON; ESTELA DERR