IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIJAH M. KANEAKUA, | CIVIL NO. 22-00201 DKW-WRP |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| ESTELA DERR, *et al.*, | |
| Defendants. | |

Plaintiff Elijah Kaneakua, proceeding pro se, asserts civil rights claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against former Clinical Director Dr. Nathan Kwon and former Warden Estela Derr (collectively Defendants) based on medical care that Kaneakua received in 2021-22 during his incarceration at the Federal Detention Center in Honolulu, Hawaii (FDC Honolulu).[1]  Defendants now move for summary judgment, arguing that they are entitled to qualified immunity.[2]  The

---

[1] Kaneakua is no longer in the custody of the Federal Bureau of Prisons.  *See* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "10286-022" in "Number" field; and select "Search") (last visited Dec. 1, 2025).

[2] In the alternative, Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* ECF No. 49.  Because the Court considers evidence beyond the factual allegations in the complaint, it opts to treat Defendants' motion as one for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment[.]").

Court grants Defendants' motion because Kaneakua has failed to raise a genuine issue of material fact as to whether either Dr. Kwon or Warden Derr was deliberately indifferent to his serious medical need—that is, that they consciously disregarded an excessive risk to his health.[3]

## BACKGROUND[4]

### I. Factual Background

On March 15, 2021, Kaneakua visited Dr. Kwon reporting that a preauricular cyst[5] near his right ear was infected and had been draining pus for one or two days. CSF ¶ 1; CSF Ex. A at 1. Kaneakua had experienced more than twenty similar episodes since childhood. CSF Ex. A. at 1. Kaneakua reported that his pain was intermittent and mild, describing it as a "2" on a scale of 1 to 10. CSF ¶ 1; CSF Ex. A at 1. Other than when he directly touched the infected area, Kaneakua told Dr. Kwon that he was comfortable. CSF Ex. A at 1.

---

[3] Because the Court concludes that there is no genuine issue of material fact regarding a constitutional violation, it does not decide whether any such violation was clearly established. *See Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018) ("If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity.").

[4] The following facts are taken from Defendants' concise statement of facts ("CSF") and its supporting exhibits and references. ECF No. 50. Because Kaneakua did not file a concise statement of facts in opposition to the CSF, the facts contained in that document are deemed admitted. *See* LR 56.1(g); *see also* Fed. R. Civ. P. 56(e)(2).

[5] "A preauricular cyst is a small pocket of tissue that forms near the external ear. It appears as a small hole or pit just in front of the ear, typically on one side of the face." It is "a common benign malformation commonly present at birth." *What is a Preauricular Cyst and How Can it be Treated?*, https://nosesinus.com/what-is-a-preauricular-cyst-and-how-can-it-be-treated/ [https://perma.cc/3W26-AAXQ].

Dr. Kwon prescribed an antibiotic and instructed Kaneakua to immediately notify staff of urgent or emergent concerns. CSF ¶ 1; CSF Ex. A at 1. Dr. Kwon also referred Kaneakua to an outside consultation with an ear, nose, and throat (ENT) doctor with a target date of April 26, 2021, describing the priority level of the referral as "Routine." CSF ¶ 1; CSF Ex. A at 3. Such consultations are scheduled through a third-party provider and are subject to the availability of the provider and staffing. CSF ¶ 17; Khan Decl. ¶ 7.

Before being seen by an ENT doctor, Kaneakua was transferred from FDC Honolulu to the Federal Correctional Institution in Sheridan, Oregon (FCI Sheridan) in July 2021. CSF ¶ 2; CSF Ex. M. While at FCI Sheridan, Kaneakua was not under Dr. Kwon's care. CSF ¶ 2. Another provider at FCI Sheridan, however, requested a consultation with an ENT doctor on Kaneakua's behalf with a target date of December 12, 2021. CSF ¶ 3; CSF Ex. B. Again, the consultation was assigned a priority level of "Routine." *Id.*

Before Kaneakua was seen by an ENT doctor at FCI Sheridan, he was transferred back to FDC Honolulu, where he arrived on January 18, 2022. CSF ¶ 4; Ex. M. On January 20, 2022, Kaneakua spoke with Dr. Kwon, who again

requested a consultation with an ENT doctor. CSF ¶ 4; CSF Ex. C at 4. The new target date was March 1, 2022, and the priority level remained "Routine."[6] *Id.*

On March 16, 2022,[7] Kaneakua received medical treatment from a nurse practitioner, who is not a named defendant. CSF ¶ 6; CSF Ex. E at 1. The nurse irrigated Kaneakua's right ear after he reported experiencing a dull pain. CSF Ex. E at 1. He described the pain as being a "3." *Id.* The nurse concluded that the cause of the pain was an infection at the same spot near Kaneakua's right ear, and she prescribed a nonsteroidal anti-inflammatory drug (NSAID) and another antibiotic. *Id.* at 2. The nurse scheduled a follow-up for March 30, 2022, and confirmed Kaneakua's pending consultation with an ENT doctor. *Id.* The nurse instructed Kaneakua to return if his condition either did not improve or worsened. *Id.*

Kaneakua submitted to Warden Derr a Request for Administrative Remedy on March 25, 2022. CSF ¶ 8; CSF Ex. N. Kaneakua complained that he had not been seen by an ENT doctor, and he asked to be seen immediately. CSF Ex. N. at

---

[6]On February 15, 2022, a physician's assistant at FDC Honolulu discontinued the consultation request that had been made while Kaneakua was at FCI Sheridan, but Dr. Kwon's January 20 request remained pending. CSF ¶ 5; Ex. D.; Khan Decl. ¶ 7.

[7]It is unclear if Kaneakua was seen by a nurse practitioner on March 16 or March 17. *See* CSF Ex. E (identifying the "Encounter Date" as March 16, but listing the "Pain Assessment" date as March 17). Defendants state that the correct date is March 16, *see* CSF ¶ 6, so that is the date used by the Court. The precise date is immaterial.

5. Warden Derr responded to the request on April 6, 2022. *Id.* at 2. In the Response, Warden Derr noted the following: (1) an evaluation on January 20, 2022, [by Dr. Kwon] revealed a "chronic condition" that Kaneakua had since birth, and it was "not noted as emergent"; (2) a consultation with an outside specialist was scheduled [by Dr. Kwon] and remained pending; (3) Kaneakua was evaluated again on March 16, 2022 [by a nurse practitioner], and he was "prescribed medication to help control infection and pain"; and (4) Kaneakua had made no additional complaints of pain or discomfort.[8] *Id.* Warden Derr stated that Kaneakua would be notified when his appointment with an ENT doctor was confirmed. *Id.*

Kaneakua commenced this lawsuit by filing a complaint in this case on April 29, 2022. ECF No. 1.

On July 26, 2022, Kaneakua again received medical treatment from a nurse practitioner. CSF ¶ 10; CSF Ex. F. The nurse diagnosed a periauricular abscess near Kaneakua's right ear, and Kaneakua reported being unable to sleep because of the pain. CSF Ex. F at 1. This time, Kaneakua said that the pain was a "10." *Id.*

---

[8] Warden Derr also stated in the Response that Kaneakua was scheduled for a follow-up appointment on April 7, 2022. CSF Ex. N at 2. The medical record from the March 16 evaluation reflects a follow-up appointment scheduled for March 30, 2022. CSF Ex. E at 2. It is unclear if the March 30 appointment was rescheduled to April 7, or if an additional follow-up appointment was scheduled for April 7. Either way, Kaneakua has offered no evidence that Warden Derr's statement regarding an April 7 follow-up appointment was inaccurate when she made it.

5

The nurse consulted Dr. Kwon who recommended sending Kaneakua to a hospital emergency department for further evaluation.[9]  CSF Ex. F at 1; CSF Ex. G at 1.  Kaneakua was taken to and returned from the hospital the same day.  CSF Ex. M.  Kaneakua returned from the hospital with a recommendation for an antibiotic and a "follow-up ASAP" with an ENT doctor.  CSF Ex. G at 1.  Dr. Kwon prescribed an antibiotic and requested a consultation with an ENT doctor with a target date of August 5, 2022.  *Id.*  This time, Dr. Kwon designated the priority level as "Urgent."  *Id.*  On August 8, Kaneakua refused a follow-up visit with a nurse practitioner.  CSF ¶ 13; CSF Ex. I at 1.

On November 2, 2022, Kaneakua again received medical treatment from a nurse practitioner.  CSF ¶ 14; CSF Ex. J at 1.  Kaneakua reported swelling near his right ear and a dull pain.  CSF Ex. J at 1.  Kaneakua said that the pain was a "3."  *Id.*  The nurse prescribed an antibiotic and ibuprofen.  *Id.* at 2.  The nurse scheduled a follow-up for November 14, *id.*, and the nurse saw Kaneakua again on November 15, CSF ¶ 15; CSF Ex. K at 1.  Kaneakua said that the wound near his right ear had healed, and he was not in pain.  CSF ¶ 15; CSF Ex. K. at 1.

---

[9]Defendants state that Dr. Kwon met with Kaneakua on July 27, 2022.  CSF ¶ 11.  Although Dr. Kwon completed his administrative note on July 27, the text of that note suggests that he met with Kaneakua on July 26.  CSF Ex. G at 1 ("MLP asked me to look at the right ear of the inmate during a sick call MLP encounter *yesterday*." (emphasis added)).  A July 26 visit with Dr. Kwon is further supported by the fact that that is when Kaneakua visited the emergency department.  *See* CSF Ex. M.

On November 18, 2022, an ENT doctor at Straub Medical Center examined Kaneakua and recommended elective surgery on his preauricular cyst. CSF ¶ 16; CSF Ex. L at 1. Dr. Kwon then requested a consultation with a head and neck surgeon, with a target date of December 27, 2022, and a priority level of "Routine." CSF Ex. L at 1. It does not appear that Kaneakua underwent surgery before he was released from FDC Honolulu to home confinement on December 28, 2022. CSF Ex. M. Kaneakua completed his sentence on February 17, 2023. *Id.*

## II.   Procedural Background

In his complaint, Kaneakua asserts *Bivens* claims against Dr. Kwon and Warden Derr based on the medical care he received at FDC Honolulu. ECF No. 4. Kaneakua alleges that Dr. Kwon violated his Eighth Amendment right to adequate medical care by failing to ensure a prompt consultation with an ENT doctor. *Id.* at 5-6. He further alleges that Warden Derr violated his Eighth Amendment rights by failing to state facts, and including misleading statements and "outright[] lies" in the April 6, 2022 Response to Kaneakua's Request for Administrative Remedy. *Id.* Kaneakua seeks $250,000 in damages and immediate medical care outside FDC Honolulu. *Id.* at 8.

Regarding damages, the Court previously granted Defendants' motion to dismiss, ECF No. 29, in which they argued that a *Bivens* remedy was not available for Kaneakua's claims, ECF No. 26. Defendants then separately moved to dismiss

as moot Kaneakua's request for injunctive relief after he was released from custody. ECF No. 32. The Court also granted this motion to dismiss, ECF No. 35, the Clerk entered judgment, ECF No. 36, and Kaneakua appealed, ECF No. 37. On appeal, the Ninth Circuit concluded that a *Bivens* remedy is available for Kaneakua's Eighth Amendment claims, but the court remanded the case for this Court to consider in the first instance whether Defendants are entitled to qualified immunity. *Kaneakua v. Derr*, No. 23-1587, 2025 WL 1924889, at *1-2 (9th Cir. July 14, 2025). Defendants now move for summary judgment on qualified immunity grounds, ECF No. 49, with no opposition from Kaneakua having been filed. The Court elects to decide the motion without a hearing. LR.7.1(c).

## **STANDARDS OF REVIEW**

### I.   **Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, "the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (citation omitted). If the moving party does so, "the burden then shifts to the non-moving party to designate

specific facts demonstrating the existence of genuine issues for trial." *Id.* To meet this burden, which is not a light one, "the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## II.     Qualified Immunity

The doctrine of qualified immunity is an affirmative defense, shielding government officials from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 815-18 (1982). To overcome qualified immunity, the plaintiff must therefore show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). In other words, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (cleaned up).

## **DISCUSSION**

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Constitution "does not mandate comfortable prisons," it also does not "permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (cleaned up). Prison officials, therefore, "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (cleaned up).

To establish a claim of inadequate medical care, a prisoner must show both a "serious medical need" and that an official's response to that need was "deliberately indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785-86 (9th Cir. 2019) (per curiam). A serious medical need is present when, for example, the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Serious medical needs can relate to physical, dental and mental health." *Id.* at 785 (cleaned up).

"To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786 (cleaned up). This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "An inadvertent or

negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment.  In other words, medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Edmo*, 935 F.3d at 786 (cleaned up).

Here, Defendants do not contend that Kaneakua did not have a serious medical need.  Even if he had such a need, however, Kaneakua has failed to show a genuine issue of material fact as to whether either Dr. Kwon or Warden Derr acted with deliberate indifference toward that need.

**I.     Dr. Kwon**

Kaneakua suggests in the complaint that Dr. Kwon should have ensured a prompt consultation with an ENT doctor.  ECF No. 4 at 5-6.

Dr. Kwon examined Kaneakua three times.  During a March 15, 2021 visit, Kaneakua reported that he was experiencing intermittent pain from an infection that had been draining pus for a day or two.  CSF Ex. A. at 1.  At the time, Kaneakua said that his pain was a "2."  *Id.*  Kaneakua told Dr. Kwon that he was comfortable, other than experiencing discomfort when he touched the infected area.  *Id.*  Dr. Kwon prescribed an antibiotic, instructed Kaneakua to immediately notify staff of any urgent or emergent concerns, and requested a consultation with an ENT doctor.  *Id.* at 1, 3.  Dr. Kwon labeled the priority level as "Routine." CSF Ex. A. at 3.

Dr. Kwon saw Kaneakua again on January 20, 2022, after he was first transferred to FCI Sheridan and then back to FDC Honolulu. CSF Ex. C. Although Kaneakua reported that his periauricular cyst drained approximately every two weeks, nothing suggests that Kaneakua was in any discomfort when he met with Dr. Kwon. *Id.* at 1. Because Kaneakua had not been seen by an ENT doctor while he was housed at FCI Sheridan, Dr. Kwon entered another consultation request. *Id.* at 4. Again, he labeled the request as "Routine." *Id.*

On July 26, 2022, Dr. Kwon saw Kaneakua a third time after Kaneakua reported another infection and said that he could not sleep because of the resulting pain, which he labeled as a "10." CSF Ex. F at 1. Dr. Kwon examined Kaneakua and recommended that he visit a hospital emergency department for further evaluation, a visit that occurred that same day. CSF Ex. G at 1. In accordance with the hospital's recommendation, Dr. Kwon prescribed an antibiotic, and he requested a consultation with an ENT doctor, labelling the request as "Urgent." *Id.* After Kaneakua later met with an ENT doctor who recommended elective surgery on the preauricular cyst, Dr. Kwon requested a consultation with a head and neck surgeon. CSF Ex. L at 1. The next month, Kaneakua was released from FDC Honolulu. CSF Ex. M.

Nothing in the foregoing suggests that Dr. Kwon acted with deliberate indifference. He did not deny or delay medical care at any time. When Kaneakua

reported that his pain was a "2" in March 2021, Dr. Kwon prescribed an antibiotic and instructed Kaneakua to immediately notify staff of any concerns.  CSF Ex. A.  There is no evidence that Dr. Kwon's prescribed treatment was ineffective or that Kaneakua reported any other concerns to Dr. Kwon before he was transferred to FCI Sheridan.  And when Kaneakua reported that his pain had increased to a "10" in July 2022, Dr. Kwon promptly recommended that he be sent to a hospital emergency department, a recommendation that was followed the same day.  CSF Ex. G.  After Kaneakua returned to FDC Honolulu from the hospital, Dr. Kwon followed the hospital's recommendation, prescribed another antibiotic, and scheduled a consultation with an ENT doctor.  *Id.*  Again, there is no evidence that this treatment did not work or was not timely.  In fact, Kaneakua refused a follow-up in early August 2022, CSF Ex. I, and there is no evidence that he voiced any other concerns to Dr. Kwon.

Although Kaneakua might believe that he should have seen an ENT doctor sooner, this does not demonstrate deliberate indifference *by Dr. Kwon*.  See *Brothers v. Neven*, No. 2:17-CV-641 JCM (BNW), 2021 WL 1950020, at *5 (D. Nev. May 14, 2021) ("Perhaps [the plaintiff] could have seen an outside specialist sooner.  But again, a difference of opinion regarding medical treatment does not evince deliberate indifference.").  Deliberate indifference is a high standard, and a mere showing of medical malpractice, negligence, or even gross negligence is not

13

sufficient to establish an Eighth Amendment violation.  *Toguchi*, 391 F.3d at 1060.  Here, there is simply no evidence that Dr. Kwon consciously disregarded an excessive risk to Kaneakua's health.  *See Williams v. Kohler*, 717 F. App'x 734, 735 (9th Cir. 2018) (affirming summary judgment where there was no record evidence that defendant purposefully ignored or failed to respond to medical condition).  Dr. Kwon is therefore entitled to summary judgment.

**II.    Warden Derr**

Kaneakua asserts in the Complaint that Warden Derr's April 6, 2022 Response to his Request for Administrative Remedy includes misleading statements and "outright[] lies" presumably entitling him to a *Bivens* remedy.  ECF No. 4 at 6.

Warden Derr made various factual statements in her timely Response, including the following: (1) Kaneakua arrived back at FDC Honolulu on January 18, 2022; (2) a medical evaluation on January 20, 2022 revealed a chronic condition that Kaneakua had since birth; (3) a consultation with an outside specialist was requested and pending; (4) after another medical evaluation on March 16, 2022, Kaneakua was prescribed medication to help control infection and pain; and (5) Kaneakua did not report additional pain or discomfort before Warden Derr signed the Response on April 6.  CSF Ex. N at 2.

To the extent Kaneakua asserts that the Response is misleading and inaccurate, he is simply mistaken, as all the factual statements set forth above are consistent with the record evidence. After arriving back at FDC Honolulu from FCI Sheridan on January 18, 2022, CSF Ex. M, Dr. Kwon examined Kaneakua and noted that he had a "[r]ecurrent right pre-auricular cyst with multiple infections, over 20, since birth." CSF Ex. C at 4. Dr. Kwon requested a consultation with an ENT doctor that was pending when Warden Derr signed the Response on April 6. *See* CSF ¶¶ 4-6; CSF Ex. C at 4. Kaneakua's medical records also show that a nurse practitioner treated him on March 16, 2022, irrigated his ear, prescribed an antibiotic and an NSAID, noted the pending ENT consultation, and instructed Kaneakua to return if the condition did not improve or worsened. CSF Ex. E. Finally, there is no evidence that Kaneakua otherwise complained about pain or discomfort before Warden Derr's April 6 Response.

Based on the foregoing, Kaneakua has failed to show that the April 6 Response includes any material inaccuracies. Even if Kaneakua quibbles with the language used in the Response, he has not demonstrated that a genuine issue exists as to whether Warden Derr was deliberately indifferent to a serious medical need. She followed up on his Request for Administrative Remedy within days, verifying that he was promptly seen by medical providers and that a plan was in place to address his concerns. Kaneakua's allegations in the complaint that Warden Derr's

15

Response "fails to state facts, misleads and outright lies" is itself misleading. Indeed, he has failed to show that Warden Derr consciously disregarded an excessive risk to his health. *See Floyd v. Ada Cnty.*, No. 20-35481, 2022 WL 1467979, at *1 (9th Cir. May 10, 2022) ("Allegations are not the same as proof."). Warden Derr is thus also entitled to summary judgment on the basis of qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment, ECF No. 49, is GRANTED. The Clerk is instructed to enter Judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

DATED: December 1, 2025 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson
_____
Derrick K. Watson
Chief United States District Judge

---

*Elijah M. Kaneakua v. Estela Derr, et al.;* Civil No. 22-00201 DKW-WRP;
**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**